**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
Anne Seeling (AS3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

ELIZABETH TORIBIO,
*on behalf of herself and others similarly situated*,

        Plaintiff,                        Case No.:

                                          **CLASS ACTION COMPLAINT**

              v.                        **JURY TRIAL DEMANDED**

PEPSICO, INC.

            Defendant.

---

Plaintiff ELIZABETH TORIBIO (herein "Plaintiff TORIBIO" or "Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, pursuant to this Class Action Complaint against the Defendant, PEPSICO, INC. ("Defendant" or "PepsiCo"), alleges the following:

### NATURE OF THE ACTION

1.    This is a consumer protection action seeking redress for, and a stop to, Defendant's unfair and deceptive practice of advertising and marketing its Izze Sparking beverages as having "No Added Sugar" and "No Preservatives."

2.    Defendant's "No Preservatives" representations are deceptive because they contain the preservatives citric acid and/or ascorbic acid. This labeling deceives consumers into

believing that they are receiving healthier preservative-free beverages even though these products cannot live up to these claims.

3.      The beverages' "No Added Sugar" representations are misleading because they lead consumers to believe that they are receiving a low calorie product when they are not. Defendant's beverages actually have a high calorie count when compared to competitors' products that do not have the "No Added Sugar" claim.

4.      These misrepresentations deceive consumers into thinking they are receiving a healthier, lower-calorie juice, when they are not. Conscious of consumers' increased interest in more nutritious beverages free of additives, growing concern over excessive calories, and willingness to pay more for products perceived to meet these preferences, Defendant misleadingly, illegally, and deceptively seeks to capitalize on these consumer health trends.

5.      Defendant sold and continues to sell beverages with deceptive or misleading labeling. These are:

    a. Izze Sparkling Grapefruit (citric acid, ascorbic acid). *See* **Exhibit A**, pgs. 1-2.
    b. Izze Sparkling Blackberry (citric acid, ascorbic acid). *See* **Exhibit A**, pgs. 3-4.
    c. Izze Sparkling Clementine (citric acid, ascorbic acid). *See* **Exhibit A**, pgs. 5-6.
    d. Izze Sparkling Apple (citric acid,  ascorbic acid). *See* **Exhibit A**, pgs. 7-8.
    e. Izze Sparkling Peach (citric acid). *See* **Exhibit A**, pgs. 9-10.
    f. Izze Sparkling Blueberry (citric acid). *See* **Exhibit A**, pgs. 11
    g. Izze Sparkling Pomegranate (citric acid) *See* **Exhibit A**, pgs. 12-13.
    h. Any other Izze Sparkling product that (1) claims to have no preservatives despite containing citric acid, ascorbic acid, or any other preservatives, and/or (2) claims to have no added sugar but does not have a significantly reduced calorie count or a disclosure to this effect (collectively, "the Products"; individually, a "Product").

6.      Plaintiff brings this proposed consumer class action on behalf of herself and all other persons who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products for consumption and not resale.

7.     Defendant markets the Products in a way that is deceptive to consumers under consumer protection laws of New York, the other 49 states, and the District of Columbia.

8.     Defendant violates statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade and business practices, and false advertising. These statutes are:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
7) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
16) Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
17) Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*
19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*
20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*
21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
22) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
23) Michigan Consumer Protection Act, § § 445.901, *et seq.;*
24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
25) Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*
26) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*
27) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*
28) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*
29) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*
30) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*
31) New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*
32) New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq.;*

*33)* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*

*34)* North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

*35)* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*

*36)* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*

*37)* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

*38)* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

*39)* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

*40)* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

*41)* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

*42)* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*

*43)* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

*44)* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*

*45)* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*

*46)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

*47)* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*

*48)* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*

*49)* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

*50)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*

*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

## JURISDICTION AND VENUE

9.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative Class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

10.    This court has personal jurisdiction over Defendant because Defendant's principal place of business is in New York State.  The Products are advertised, marketed, distributed, and sold throughout New York State. Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including New York State. Defendant is authorized to do business in New York State, and Defendant has sufficient contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction

by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within New York State.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and Defendant is subject to personal jurisdiction in this District.

**PARTIES**

*Plaintiff*

Plaintiff ELIZABETH TORIBIO is, and at all times relevant hereto has been, a citizen of New York and a resident of Bayshore, New York. On January 18, 2018, Plaintiff TORIBIO purchased an Izze Sparkling Grapefruit beverage from a Chipotle in Bay Bore, New York for $3.10.

Plaintiff TORIBIO purchased the Product relying on Defendant's representations on the Product packaging. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff TORIBIO was injured when she paid money for a beverage that did not deliver the qualities it promised and misled her as to its contents. She paid the above sum on the assumption that she was purchasing a lower calorie, preservative-free Product. She would not have been willing to pay the sum she paid had she known it was mislabeled. Defendant's "No Added Sugar" labeling misled Plaintiff TORIBIO into thinking that the Product had a lower caloric value than its competitors, when the Product actually has significantly higher caloric value. Defendant also deceived Plaintiff TORIBIO into believing she was purchasing a preservative-free beverage. Defendant delivered a Product with significantly less value than was warranted by its representations, thereby depriving her of the benefit of her bargain and injuring her in an amount up to the purchase price. Damages can be calculated through expert testimony at trial. Further, should Plaintiff TORIBIO encounter

the Products in the future, she could not rely on the truthfulness of the packaging, without corrective changes to the packaging and the advertising of the Products.

*Defendant*

12.   Defendant PEPSICO, INC. is a corporation organized under the laws of North Carolina with its headquarters at 700 Anderson Hill Road, Purchase, New York 10577. Defendant's address for service of process is CT Corporation System. 111 Eighth Avenue, New York, New York 10011.

13.   Defendant develops, markets Products throughout the United States.  The Products are available at numerous retail and online outlets, including Target, Stop & Shop and Amazon.com.

14.   The advertising for the Products, relied upon by Plaintiff, is approved by Defendant and its agents, and is disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. The advertising for the Products is designed to encourage consumers to purchase the Products, and misleads the reasonable consumer, i.e. Plaintiff and the Class. Defendant owns, manufacture and distributes the Products, and/or authorizes the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Products.

## FACTUAL ALLEGATIONS

### Defendant's "No Sugar Added" Representation Is Misleading To Reasonable Consumers

15.   Defendant mislabels its Products as having "No Added Sugar" both on its website and on the front of the packaging.

16.   The "No Added Sugar" representation misleads consumers into thinking that they are receiving products that are healthier and lower in calories. The Products actually have more

calories than some of its competitors' products that contain sugar and do not use the "No Sugar Added" claim.

17.     Defendant's "No Sugar Added" representations induce reasonable consumers into thinking that a higher calorie product is actually low-calorie, and to choose the higher calorie product over lower calorie alternatives.

18.     Consumers associate claims about the absence of sugar with lower calorie counts when there is no disclaimer stating otherwise. The FDA has reached the same conclusion:

> Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a product which is low in calories or significantly reduced in calories.

21 C.F.R. § 101.60(c)(1)

19.     A study done by food scientists published in the *Nutrition Bulletin* concluded that consumers associate sugar claims with the amount of calories in a product:

> Participants felt deceived if sugar reduction claims were being made without a significant reduction in calories, and this was also seen as a frustrating revelation for those on a weight loss diet. [Consumers] clearly link sugar to calories and therefore expect a reduction in sugar content to deliver a reduction in calorie content, and they felt misled if this was not the case.[1]

20.     That the Products do not offer any calorie reduction is proven by comparisons with competitor sparkling juices.  For example, Wave Sparkling Grapefruit Juice has 17.5 calories per 248 ML while the Products have 90 per 248 M—over 400% more calories.  *See* **Exhibit B**, pgs. 1-3.  Similarly, Minute Maid Sparkling Mixed Berry Juice contains 14.88 calories per 248 ML serving, only 16.5% of the calories in the Products.  *See* **Exhibit B**, pgs. 4-5.  The point is rendered stark by a comparison with Coca-Cola.  The Products contain <u>only 8.5% fewer</u> calories than Coca-

---

[1] http://onlinelibrary.wiley.com/doi/10.1111/j.1467-3010.2012.01958.x/full?wol1URL=/doi/10.1111/j.1467-3010.2012.01958.x/full&regionCode=US-NY&identityKey=f6009ec0-106d-4765-97f6-ae3e3afb653f

Cola, when taking serving size into consideration.  *See* **Exhibit B**, pgs. 6-7.  And no one would

consider Coca-Cola to be a lower calorie drink.

21.    Plaintiff's fraud claims are fully consistent with federal regulations.  21 C.F.R. §

101.60 contains special requirements for nutrient claims that use the phrase "No Added Sugar":

> (2) The terms "***no added sugar***," "without added sugar," or "no sugar added"
> maybe used only if:
>
> (i) No amount of sugars, as defined in §101.9(c)(6)(ii), or any other ingredient that
> contains sugars that functionally substitute for added sugars is added during
> processing or packaging; and
>
> (ii) The product does not contain an ingredient containing added sugars such as
> jam, jelly, or concentrated fruit juice; and
>
> (iii) The sugars content has not been increased above the amount present in the
> ingredients by some means such as the use of enzymes, except where the intended
> functional effect of the process is not to increase the sugars content of a food, and
> a functionally insignificant increase in sugars results; and
>
> (iv) The food that it resembles and for which it substitutes normally contains added
> sugars; and
>
> (v) ***The product bears a statement that the food is not "low calorie" or "calorie***
> ***reduced" (unless the food meets the requirements for a "low" or "reduced***
> ***calorie" food) and that directs consumers' attention to the nutrition panel for***
> ***further information on sugar and calorie content.***
>
> 21 C.F.R. § 101.60(c)(2) (emphasis added)

22.    The Products do not conspicuously disclose that the beverage is not "low calorie"

or "calorie reduced" in a way that directs consumers to the nutrition panel.  Nor are they exempted

from this requirement by actually being "low calorie" or "reduced calorie" beverages:

> (4) The terms ***"reduced calorie,"*** "reduced in calories," ***"calorie reduced,"***
> "fewer calories," ***"lower calorie,"*** or "lower in calories" may be used on the
> label or in the labeling of foods, except as limited by § 101.13(j)(1)(i) and except

meal products as defined in § 101.13(l) and main dish products as defined in § 101.13(m), provided that:

(i) ***The food contains at least 25 percent fewer calories per reference amount customarily consumed than an appropriate reference food as described in § 101.13(j)(1); and***

21 C.F.R. § 101.60(b)(4)  (emphasis added)

23.     As the Minute Maid and Wave products discussed above both illustrate, the Products are not reduced calorie by this definition.  Not only do the Products not contain at least 25 percent fewer calories than these reference foods, they actually contain significantly <u>more</u> calories.  Defendant's violations of state consumer protection laws are therefore also violations of federal law.

**<u>Defendant's "No Preservatives" Representation Is False And Misleading To A Reasonable Consumer</u>**

24.     Defendant misleads consumers into thinking that the Products contain no preservatives with its false labeling claims to this effect.  However, the Products actually contain citric acid and/or ascorbic acid, whose functions as preservatives have been well-documented.

25.     Citric and ascorbic acids are preservative as the term is defined by the FDA in 21 C.F.R. § 101.22(a)(5):  "The term *chemical preservative* means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."

26.     The MacMillan Dictionary defines "tends" as "to usually do a particular thing," as in "He tends to exaggerate" or "The gym tends to get very busy at around six o'clock."[3]  The scientific evidence and FDA statements cited below establish that citric acid and ascorbic acid both

---

[3] http://www.macmillandictionary.com/us/dictionary/american/tend

tend to prevent or retard the deterioration of food. This remains the case regardless of the subjective

purpose for which this substance is added to the Product.

27.     Citric acid and ascorbic acid not fall into any of the regulatory exemptions from the

definition of a preservative.

28.     The FDA expressly classifies citric acid and ascorbic acid as preservatives in its

Overview of Food Ingredients, Additives, and Colors, on the FDA's website:

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| **Preservatives** | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | **Ascorbic acid**, **citric acid**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

http://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211.htm.

29.     The online magazine livestrong.com explains how ascorbic acid functions as a

preservative:

> Preservatives are divided into three categories: Antimicrobials, antioxidants and ascorbic acid. Antimicrobials prevent bacterial, mold and yeast development. Antioxidants preserve fats, keeping them from going rancid. Ascorbic acid, more commonly known as vitamin C, falls in the third group as a preservative that stops foods from continuing to ripen, an aging process that leads to decay.

> **About Ascorbic Acid**

> Ascorbic acid is a water-soluble vitamin with antioxidant properties. Inside your body, the nutrient preserves cell integrity by neutralizing free radicals, which are toxic molecules that can damage healthy cells and cause disease.

**Preserving Properties**

Ascorbic acid neutralizes oxygen when it comes into contact with it. Oxygen allows foods to continue to ripen, an aging process similar to the one people go through that ends in death. Oxygen is also vital for many microorganisms to thrive, some of which cause decay. Ascorbic acid slows or neutralizes these events. The substance blocks cured meat's propensity to form carcinogens called nitrosamines, for example. In the process, the vitamin also preserves the flesh's red color. In addition, ascorbic acid preserves flavor.

**Food-Preservation Mechanism**

Canned vegetables, bottled juices, jams and other preserved fruit are processed foods manufacturers protect with ascorbic acid. The vitamin's acidity makes it hard for the enzyme phenolase to act. Phenolase accelerates oxidation, a chemical process in which oxygen level rises, resulting in decay. This is also the process that ascorbic acid combats.[4]

30.    Citric acid's nature as a preservative is also acknowledged by insiders in the preservative manufacturing and distribution industries. FBC Industries, Inc. a manufacturer and supplier of FCC grade Citric Acid additives, acidulants, buffering agents and preservatives for the food and beverage industry describes citric acid's function:  "Citric acid is the most commonly used acidulant in the industry. As a food additive or food grade product, citric acid is used as a flavoring and preservative. The buffering properties of citrates are used to control pH and flavor."[5]

31.    The FDA's Warning Letter to the manufacturer of the Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites" dated October 6, 2010 further confirms that citric acid and ascorbic acid are preservatives:

"The 'Pineapple Bites' and 'Pineapple Bites with Coconut' products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."

*See* **EXHIBIT C**, FDA Warning Letter dated October 6, 2010 (emphasis added).

---

[4]http://www.livestrong.com/article/496950-is-ascorbic-acid-a-preservative/
[5]  http://www.fbcindustries.com/Citric_Acid.aspx

32.   As described above in ¶¶ 25, 26, a preservative as defined by the FDA is a substance that "tends" to prevent or retard the deterioration of foods.  Thus, it is not necessary that it function as a preservative in every single instance for it to qualify as a preservative according to the FDA's definition, so long as this is its general tendency.

33.   However, citric acid and ascorbic acid do as a matter of fact function as a preservative in the Product.

34.   This is confirmed by the, a food scientist with a Ph.D., nearly thirty years, of experience in the field, and published work.  *See* **Exhibit D**, Declaration of Dr. Marc Meyers ("Meyers Decl.") ¶¶ 3-19.

35.   Confirming the general preservative properties of citric acid, Dr. Meyers observes that citric acid is an acidity regulator and acidulant.  Meyers. Decl. ¶¶ 21.

36.   In addition, citric acid and ascorbic acids are both anti-microbials.  Meyers Decl. ¶ 22.  Both acids kill microbes by reducing the pH of products to which they are added.  Meyers Decl. ¶ 26.  Both can also kill microbes directly by penetrating the cell walls of microorganisms.  Meyers Decl. ¶ 27.

37.   These acids' effects include "delaying spoilage from bacteria, mold, fungi, and yeast; delaying changes in color, flavor, texture; and delaying browning and rancidity" over the shelf-life of a food or beverage product.  Meyers Decl. ¶ 25.

Citric acid and ascorbic acid also function as antioxidants by sequestering metal ions (chelation), which prevents food deterioration and retards microbial growth.  Meyers Decl. ¶ 28.

38.   Dr. Meyers observes that while citric acid and ascorbic acid can also be employed to impart taste, a greater quantity of these substances is required to impart taste than to preserve

foods and beverages.  The preservative effects of these acids may be reduced at lower levels, but it will still be present.  Meyers. Decl. ¶¶ 24-25.

39.     Thus, Defendant cannot argue that it includes citric acid and ascorbic acid in the Product merely to impart added taste, because the quantities required to impart taste are more than sufficient to function as preservatives.  Even if imparting taste is Defendant's primary <u>motivation</u> for including these acids, this motivation has no bearing on their chemical <u>functioning</u>.

40.     In addition, Dr. Meyers also makes the following points about citric and ascorbic acids' functioning in the Products specifically:

(a) Citric acid and ascorbic acids function as preservatives in the Products by serving as acidulants, lowering their pH-level and thereby combatting microorganisms.  Meyers Decl. ¶¶ 30-31.

(b) Citric acid and ascorbic acid function as preservatives in the Products by serving as antioxidants.  Meyers. Decl. ¶ 31.

(c) Citric acid functions as a preservative in the Product by infiltrating and then weakening or killing microorganisms through direct antimicrobial effect.  Regardless of whether this is the primary purpose for which it is added to the Product, it still functions as a preservative by direct microbial effect, lowering pH levels, and acting as a sequestrant and indirect antioxidant.  Meyers Decl. ¶ 32.

(d) The ascorbic acid in the Products also infiltrates and then either weakens or kills microorganisms.  Ascorbic acid also acts as a direct antioxidant, preserving the Products against microbial and chemical degradation.  These antimicrobial effects exist over and above the antimicrobial effects of reducing pH levels.  Meyers Decl. ¶ 32.

(e) Citric acid and ascorbic acid function as preservatives in the Products through sequestration, which prevents oxidation and impedes microbial growth in the Products. Meyers Decl. ¶ 33.

(f) Citric acid and ascorbic acid serve these functions regardless of whether they are also being used as flavorants.  Meyers Decl. ¶ 32.

(g) The fact that Defendant may also employ other means of preserving the Product, like a hermetic seal, does not change citric and ascorbic acids' function as preservatives. Meyers Decl. ¶¶ 34-35.

## Plaintiff's Claims Are Consistent With Federal Law

Defendant's deceptive misrepresentations violate the FDCA, which provides that "[a] food shall be deemed misbranded. If its labeling is false or misleading in any particular." 21 U.S.C. § 343 (a)(1).

41.    Plaintiff's claims are not preempted by the FDCA because the definition of "preservative" as used herein is identical with that of the FDA (see above). Moreover, FDA regulations specifically note that claims like "contains no preservatives" are non-nutritive claims that that are not governed by 21 C.F.R. § 101.13.  *See* 21 C.F.R. § 101.65(b)(2).  Since the FDA has not issued specific standards governing when "no preservative" claims are either true or false, such representations fall outside the ambit of FDA regulations.  Accordingly, Plaintiff's claim cannot possibly be preempted.   *See Bimont v. Unilever U.S., Inc.*, No. 14-CV-7749 (JPO), 2015 U.S. Dist. LEXIS 119908, at *6 (S.D.N.Y. Sep. 9, 2015) ("preemption does not preclude a state-law claim if the state requirement is outside the scope of the relevant federal requirements").

**Plaintiff And Class Members Were Injured As A Result Of Defendant's Misrepresentation**

42.     Plaintiff and Class members were injured when Defendant denied them the full benefit of their bargain. They paid money for Products that they were lead to believe were preservative-free and low-caloric, and then received Products that were preservative-laden and high in calories, which have significantly less value. Plaintiff and Class members were thus deprived of the benefit of their bargain.  Plaintiff and Class members would not have purchased the Products, or would only have been willing to pay less for them, had they known the truth about Defendant's deception.  Plaintiff and Class members were injured in an amount up to the purchase price, the difference between the actual value of the Products and the value of the Products as misrepresented to them by Defendant, to be determined by expert testimony at trial.

43.     By representing that the Products have "No Preservatives" Defendant seeks to capitalize on consumers' preference for healthier foods and drinks with fewer additives, and the association between these products and a wholesome way of life.

44.     American consumers are increasingly seeking out and purchasing foods that they perceive are principally made of ingredients that are healthful and nutritious.[7]

45.     Consumers are willing to pay more for less processed products with no additives because of this association as well as the perceived higher quality, health, and safety benefits associated with preservative-free foods.

46.     The marketing research firm Mintel reports that more and more Americans are concerned with avoiding foods containing preservatives:

> Foods bearing "free-from" claims are increasingly relevant to Americans, as they
> perceive the products as closely tied to health. New research from Mintel reveals

---

[7] Nancy Gagliardi, Consumers Want Healthy Foods—And Will Pay More for Them, FORBES (Feb. 18, 2015, 11:30 AM), http://goo.gl/A7Z5WN (last visited 01/02/2018) (88% of respondents willing to pay more for healthier foods); see INT'L FOOD INFO. COUNCIL FOUND., WHAT'S YOUR HEALTH WORTH?: FOOD & HEALTH SURVEY 2015, at 42 (2015), http://goo.gl/4g5wNb.

that 84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent).

Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent).[8]

47.    Alternet.org reports on research showing that most Americans are prepared to pay a premium price for healthier options:

Not only are consumers increasingly seeking out wholesome foods, they are willing to pay a premium for them. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 88 percent of Americans are willing to pay more for healthier foods. Global sales of healthy food products are estimated to reach $1 trillion by 2017, according to Euromonitor.

When it comes to what consumers will be seeking out more of over the coming year, it may amount to single word. "Just think of the word no," Seifer said. "No preservatives, no additives, no growth hormones."[9]

48.    The misleading suggestion that the Products are low calorie foods, created by Defendant's "No Added Sugar" representations, also increased the Products' value in the eyes of consumers.  Research by Transparency Market Research (TMR) shows that consumer preference for low calorie foods is increasing:

A new market report by Transparency Market Research (TMR), Albany, N.Y., valued the global low-calorie food market at USD $7.4 billion in 2013 and researchers expect the sector to post a CAGR of 5.9% from 2014 to 2019, to reach an estimated value of USD $10.4 billion in 2019.

TMR researchers note that demand for low-calorie food also is increasing due to changing lifestyles, an increasing number of health conscious people, and growing consumer confidence in low-calorie products due to their natural claims.[10]

---

[8] http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed

[9] http://www.alternet.org/food/8-food-trends-watch-2016

[10] https://www.preparedfoods.com/articles/114285-low-calorie-market-growth

16

49.     *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) ("the issue of 'price premium' was relevant because it showed that Plaintiffs paid more than she would have for the good but for the deceptive practices of the defendant-sellers"); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("[I]n his Complaint, Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.'…Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive."); *Koenig v. Boulder Brands, Inc*., 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) (Plaintiffs claim that, but for Defendant's "unfair and deceptive practices," they—and the putative class—would not have purchased, or paid a price premium for, Smart Balance. Compl. ¶¶ 7, 81. Indeed, Plaintiffs claim that they paid price premiums specifically 'based on Defendant's misrepresentations,' and allege that they deserve damages in the amount of either the purchase prices, or the price premiums that they paid for Smart Balance. Id. ¶ 81. Accordingly, the Court finds that Plaintiffs have adequately alleged injury under GBL § 349…")

**Defendant's Misrepresentations Were Material To, And Would Be Reasonably Relied Upon By, Reasonable Consumers**

50.     Plaintiff and Class members reasonably relied on Defendant's false and/or misleading representations that the Products contained no added sugar and were free of preservatives.

51.     At the point of sale, Plaintiff and Class members did not know, and had no reason to know, that the Products were misbranded and misleading as set forth herein, and would not have bought the Products had they known the truth about them.

52.     A representation that a product has no preservatives or no sugar added is material to a reasonable consumer when deciding to purchase it. Plaintiff did, and a reasonable consumer would, attach importance to whether Defendant's Products were free of preservatives and are low calorie because it is common knowledge that consumers prefer to avoid foods with higher calories and potentially unhealthy additives (see consumer behavior research above).  Moreover, Defendant would not have included these representations on the Product labels if this was not going to influence consumer behavior.

**Defendant Has An Intent To Mislead**

53.     Defendant knew that its "No Added Sugar" and "No Preservatives" claims are misleading.

54.     Upon information and belief, Defendant retains food scientists who can apprise it of the preservative properties of citric and ascorbic acids.

55.     Upon information and belief, Defendant retains attorneys who can apprise it of FDA regulations.  Having been apprised of these regulations, Defendant knew of the FDA's determinations that its "No Added Sugar" claims would mislead reasonable consumers by suggesting a lower caloric content than the Product can actually deliver.

56.     Given the premium that consumers attach to lower-calorie preservative-free foods, discussed above, Defendant has a natural interest in misleading consumers as detailed above, as its deceptions and misleading omissions provide a clear marketing advantage over competitors that do not engage in such deceptive conduct.

## **CLASS ACTION ALLEGATIONS**

57.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules

of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who made retail
> purchases of Products during the applicable limitations period,
> and/or such subclasses as the Court may deem appropriate ("the
> Nationwide Class").

In the alternative, Plaintiff seeks to represent a Class consisting of:

> All persons or entities who made retail purchases of the Products in
> New York during the applicable limitations period, and/or such
> subclasses as the Court may deem appropriate ("the New York
> Class").

58.     The proposed Classes exclude current and former officers and directors of

Defendant, members of the immediate families of the officers and directors of Defendant,

Defendant's legal representatives, heirs, successors, assigns, any entity in which it has or has had

a controlling interest, and the judicial officer to whom this lawsuit is assigned.

59.     Plaintiff reserves the right to revise the Class definition based on facts learned in

the course of litigating this matter.

60.     This action is proper for Class treatment under Rules 23(b)(1)(B) and 23(b)(3) of

the Federal Rules of Civil Procedure. While the exact number and identities of other Class

members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are

millions of Class members. Thus, the Class members are so numerous that individual joinder of

all Class members is impracticable.

61.     Common questions of law and fact arise from Defendant's conduct described herein.

Such questions are common to all Class members and predominate over any questions affecting

individual Class members. These include:

    a.    whether claiming "No Preservatives" on Products containing citric acid and ascorbic acid is false and misleading;

    b.    whether claiming "No Added Sugar" on Products that have a high caloric content is misleading.

    c.    whether Defendant deprived Plaintiff and Class members of the benefit of their bargains because the Products purchased had less value than what Defendant warranted;

    d.    whether Defendant must disgorge any and all profits it has made as a result of its misconduct; and

    e.    whether Defendant should be barred from marketing the Products as having "No Preservatives" and "No Added Sugar."

62.    Plaintiff's claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff and Class members purchased Defendant's Products and sustained similar injuries arising out of Defendant's conduct in violation of Federal and New York state law. Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Classes were caused directly by Defendant's unfair and deceptive practices. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of Class members and are based on the same legal theories.

63.     Plaintiff will fairly and adequately represent and pursue the interests of the Classes and has retained competent counsel experienced in prosecuting class actions. Plaintiff understands the nature of her claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class members. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.

64.     Plaintiff has retained highly competent and experienced class action attorneys to represent their interests and those of the Class members. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for them.

65.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

66.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refuses to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

67.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes

predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

68.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Classes, although certain Class members are not parties to such actions.

69.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

## INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

70.     Plaintiff realleges and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

71.     Plaintiff brings these claim on behalf of herself and the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

72.     Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

73.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

74.     Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiffs is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

75.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

76.     The practices employed by Defendant, whereby it advertises, promotes, and markets its Products as free of added sugar and preservatives is unfair, deceptive, misleading, and in violation of the NY GBL § 349.

77.     The foregoing deceptive acts and practices were directed at consumers.

78.     Defendant should be enjoined from representing "No Preservatives" and "No Added Sugar" on the Product labels pursuant to NY GBL § 349.

79. Plaintiff, on behalf of herself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II

### DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

80. Plaintiff realleges and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

81. Plaintiff brings these claims and on behalf of herself and other members of the Nationwide Class for Defendant's violations of NY GBL § 349.

82. Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the other members of the New York Class for Defendant's violations of NY GBL § 349.

83. Defendant's business act and practices and/or omissions as alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive, and unfair acts or practices in the conduct of any business, trade, or commerce.

84. Defendant's Practices described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, *inter alia*, the following reasons:

    a. Defendant misrepresents or misleadingly advertises that the Products have "No Preservatives" and "No Added Sugar" with an intent to cause Plaintiff and

Class members to believe that they are a healthy alternative in comparison to competitors;

b.      Defendant caused Plaintiff and Class members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through their conduct;

c.      Defendant made material representations and statements of fact to Plaintiff and Class members that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were.

85.      The practices employed by Defendant, whereby Defendant advertises, promotes, and markets its Products as having "No Added Sugars" and "No Preservatives" are unfair, deceptive, and misleading and are in violation of NY GBL § 349.

86.      Under the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices is malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

87.      Defendant's actions impact the public interest because Plaintiff was injured in exactly the same way as millions of others purchasing the Products as a result of and Defendant's generalized course of deception.

88.      The foregoing deceptive acts and practices are directed at consumers.

89.      The foregoing deceptive acts and practices proximately caused Plaintiff and Class members to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products. Plaintiff and Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

## COUNT III

## DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (FALSE ADVERTISING LAW)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

90.    Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs and further allege as follows:

91.    Plaintiff brings this claim individually, as well as on behalf of members of the Nationwide Class, for violations of NY GBL § 350.

92.    Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the members of the New York Class for violations of NY GBL § 350.

93.    Defendant has been and/or is engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

94.    New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

95.    Defendant caused to be disseminated throughout New York and the United States, through advertising, marketing and other publications, statements that were untrue and/or misleading.

96.     Defendant's affirmative misrepresentations or deceptions of "No Added Sugars" and "No Preservatives" are material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendant's material deceptions.

97.     Defendant has violated N.Y. Gen. Bus. Law § 350 because its preservative-free and added sugar-free claims were material and likely to deceive a reasonable consumer.

98.     Plaintiff and Class members have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising.

99.     Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff and Class members seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT VII

## COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

100.    Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

101.    Defendant intentionally makes materially false and misleading representations regarding the nature of the Products.

102.    Plaintiff and Class members reasonably relied on Defendant's false and misleading representations. They did not know, and had no reason to know, that the Products contain

preservatives and have the same or higher caloric value compared to other products without the "No Added Sugar" claim. They would not have purchased the Products had they known the truth.

103.    Defendant knew and intended that Plaintiff and the Class members would rely on its misrepresentations.

104.    Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct.

105.    Defendant is liable to Plaintiffs and Class members for damages sustained as a result of Defendant's fraud.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seek judgment against Defendant, as follows:

a.  An Order that this action be maintained as a class action, appointing Plaintiff as representative of the Nationwide Class or, in the alternative, the New York Class;

b.  An Order appointing the undersigned attorney as Class Counsel in this action;

c.  Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.  All recoverable compensatory and other damages sustained by Plaintiff and Class members;

e.  Actual and/or statutory damages for injuries suffered by Plaintiff and Class members in the maximum amount permitted by applicable law;

f.  An order (i) requiring Defendant to immediately cease their wrongful conduct as set forth in this Complaint; (ii) ordering Defendant to engage in a corrective advertising

campaign; and (iii) requiring Defendant to reimburse Plaintiff and all Class members, up to the amounts paid for the Products;

g. Statutory pre-judgment and post-judgment interest on any amounts;

h. Payment of reasonable attorneys' fees and costs; and

i. Such other relief as the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of themselves and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: June 22, 2018

Respectfully submitted,

By: _____*/s/ C.K. Lee*_____
C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
Anne Seelig (AS3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*